IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SANDRA ANDRE-GOLLIHAR,

    Plaintiff,                     No. 2:09-cv-03313 MCE KJN PS

    v.

COUNTY OF SAN JOAQUIN, et al.,

    Defendants.              ORDER

/

Presently before the court[1] is a motion to dismiss plaintiff's First Amended Complaint filed by defendant County of San Joaquin Sheriff's Office ("Sheriff's Office").[2] (Dkt. No. 22.) The court heard this matter on its law and motion calendar on January 20, 2011. (Dkt. No. 33.) Attorney Jason R. Morrish appeared on behalf of the Sheriff's Office. Plaintiff, who is currently proceeding without counsel, appeared on her own behalf.

---

[1] This action proceeds before the undersigned pursuant to Eastern District of California Local Rule 302(c)(21) and 28 U.S.C. § 636(b)(1).

[2] The following defendants have neither appeared nor filed a response to plaintiff's First Amended Complaint: County of San Joaquin, "Mrs. Brascino," "Mr. Carter," and Robert Semillo. Although it appears from the docket and the Sheriff's Office's reply in support of its motion that the United States Marshal has effectuated service upon the County of San Joaquin and Robert Semillo, it does not appear that the United States Marshal has effectuated service on individuals identified in plaintiff's service-related documents as defendants Marty Brascino and Jeffrey Carter.

1    The undersigned has considered the parties' briefs, oral arguments, and the record
2 in this case and, for the reasons stated below, grants defendant's motion to dismiss without
3 prejudice and provides plaintiff leave to file a second amended complaint within 60 days of the
4 date of entry of this order.  Notably, plaintiff has represented to the court that an attorney has
5 agreed to represent plaintiff if plaintiff is granted leave to further amend her complaint.[3]  As the
6 undersigned stated at the hearing, irrespective of whether plaintiff successfully retains counsel,
7 plaintiff will not be granted more than the allotted 60 days to file her second amended complaint,
8 and this opportunity to file a second amended complaint is plaintiff's *final opportunity* to amend.

9 I.    BACKGROUND

10        A.    Plaintiff's First Amended Complaint

11    Plaintiff's Amended Complaint & Claim, referred to herein as the "First Amended
12 Complaint," is the operative complaint in this case. (Dkt. No. 18.)  Plaintiff alleges therein that
13 defendants are liable for the death of her son, Casey Gollihar, who, on January 21, 2008, was
14 allegedly shot and killed by defendant Robert Semillo, a Deputy Sheriff with the Sheriff's Office.
15 (See First Am. Compl. at 2-3.)  In short, the First Amended Complaint alleges what can fairly be
16 construed as claims for excessive force under 42 U.S.C. § 1983 and wrongful death under
17 California state law.[4]  (See id. at 2 (alleging that "Casey Gollihar was shot with excessive force
18 and ended in wrongful death").)  Plaintiff seeks damages in the amount of "10 million American

---

[3] Both in her written opposition to the Sheriff's Office's motion to dismiss and at the hearing, plaintiff represented that an attorney, Francis Shehadah, who is not currently counsel of record, will represent plaintiff and three previously dismissed minor plaintiffs in this action if the court grants plaintiff leave to file a further amended complaint. (See Pl.'s Opp'n to Mot. to Dismiss ("Pl.'s Opp'n") at 3, Dkt. No. 29; Andre-Gollihar Decl. ¶ 3, Dkt. No. 29 at 7.)  Plaintiff's declaration appended to her written opposition indicates that an attorney, presumably Mr. Shehadah, assisted plaintiff in drafting her written opposition "as a courtesy." (Andre-Gollihar Decl. ¶ 3.)  Plaintiff represented at the hearing that Mr. Shehadah could not appear at the hearing because of a conflicting appearance in another court.

[4] In her opposition to the motion to dismiss, plaintiff states: "The gravamen of the 'AMENDED COMPLAINT & CLAIM', though inartfully pled, is really a 42 U.S.C. § 1983 claim against Defendant County of San Joaquin and the individual sheriff who killed decedent." (Pl.'s Opp'n at 2.)

2

1    Dollars.'"[5]  (Id. at 3.)

2           More specifically, plaintiff alleges that Casey Gollihar ("Mr. Gollihar") was
3    released on parole from Avenal state prison in the year 2007, and that defendant Jeffrey Carter
4    was Mr. Gollihar's parole agent. (First Am. Compl. at 2.) It is alleged that Carter would visit
5    plaintiff's home each month to interview and drug test Mr. Gollihar. (Id.) Plaintiff further
6    alleges that "[a]fter approximately one year," Carter informed plaintiff and Mr. Gollihar that: (1)
7    Mr. Gollihar's parole would end effective August 1, 2007; (2) Mr. Gollihar would no longer be
8    required to report for monthly visits or drug tests after that date; and (3) it would take 60 to 90
9    days from August 1, 2007, for the "formal parole papers" to come in the mail. (Id.)

10          Plaintiff alleges that all was well until the middle part of December 2007. (First
11   Am. Compl. at 2.) She alleges that in mid-December, Marty Brascino, who is alleged to be a
12   supervisor in the parole department, contacted plaintiff and reported that Mr. Gollihar "had not
13   been reporting once monthly to Mr. Carter, and that Casey Gollihar . . . was running from the
14   law." (Id.) Plaintiff alleges that this statement was made despite the fact that Mr. Gollihar had
15   been off of parole since approximately August 2007. (Id.) Plaintiff further alleges that she
16   immediately called Mr. Gollihar and told him to come to her home. (Id.) Plaintiff alleges that
17   Mr. Gollihar arrived at plaintiff's home and that, while both plaintiff and Mr. Gollihar were on
18   the telephone, Brascino informed plaintiff and Mr. Gollihar that she was placing Mr. Gollihar
19   back on parole and issuing a warrant for Mr. Gollihar's arrest, listing Mr. Gollihar as "armed and
20   dangerous." (Id. at 2-3.) Plaintiff alleges that "[i]t was discussed that as far as he, Casey
21   Gollihar, knew Mr. Carter had been his Parole Officer since he had gotten out of Avenal Prison
22   and was not notified any differently to that date." (Id. at 2.) In response, Brascino allegedly
23   stated, in a raised voice, that "she was putting Casey Gollihar back on Parole because she wanted
24   to and it didn't matter what anyone else said." (Id.) When plaintiff asked Brascino whether

25   ─────────────
         [5] Elsewhere in her First Amended Complaint, plaintiff alleges that the amount of damages
26   sought is "unlimited." (See First. Am. Compl. at 4.)

Brascino had been in touch with Carter, Brascino allegedly informed plaintiff that Carter was on vacation in Hawaii and was unreachable. (Id. at 2-3.)

Plaintiff alleges that, thereafter, Mr. Gollihar "saw Mrs. Brascino in person," and that plaintiff and Mr. Gollihar tried to reach Carter several times via telephone, but without success. (First Am. Compl. at 3.) Plaintiff further alleges that around Christmas time of 2007, Brascino acted "outside the scope of her duties, and issued an arrest warrant [for Mr. Gollihar] as armed and dangerous and there was a reward." (Id. at 3, 4.)

With respect to the shooting, plaintiff alleges that on January 21, 2008, Mr. Gollihar was installing a clutch in a vehicle "with the help of John Berna, and Whitney, described as his wife." (First Am. Compl. at 3.) Plaintiff alleges that Mr. Gollihar "was shot with excessive force, several times, per the Corner's [sic] Report, after being handcuffed," and that "[t]here were other witnesses." (Id.) Although not expressly alleged, the First Amended Complaint may be fairly construed as alleging that defendant Semillo is the officer who unjustifiably shot and killed Mr. Gollihar. (See id. ("Complainants are informed and believe that the shooting of Decedent was unjustified and constituted the use Of [sic] excessive force and or [sic] was otherwise tortuous [sic] conduct by Robert Semillo . . . .").)

B.  Procedural History

On November 30, 2009, plaintiff initiated this action by filing a "Complaint & Claim" ("complaint"), which named as defendants the County of San Joaquin ("County"), the Sheriff's Office, the State of California ("State"), and the California Department of Corrections and Rehabilitation ("CDCR"). (Dkt. No. 1.) Along with her complaint, plaintiff filed motions for leave to proceed in forma pauperis and to appoint counsel, the latter of which requested that plaintiff be permitted to add Casey Gollihar's minor children—Catherine Belle Gollihar, Anthony Joseph Gollihar, and Casey Gollihar—as pro se plaintiffs. (Dkt. Nos. 2, 3.)

The court granted plaintiff's application to proceed in forma pauperis. (Order and Findings & Recommendations at 2, Apr. 7, 2010, Dkt. No. 6.) It also screened plaintiff's

4

1  complaint pursuant to 28 U.S.C. § 1915(e) and recommended that the State and CDCR be
2  dismissed from this action as immune from suit. (Id. at 3-6.) The court ordered the United
3  States Marshal ("Marshal") to serve the complaint on the County and the Sheriff's Office. (Id. at
4  3.) However, the court denied, without prejudice, plaintiff's motion to appoint counsel. (Id. at
5  8.) It further denied, without prejudice, plaintiff's request to add Casey Gollihar's minor children
6  as plaintiffs in this action because the minors are not represented by counsel. (See id. at 6-8.)
7  The district judge assigned to this action, United States District Judge Morrison C. England, Jr.,
8  adopted the proposed findings and recommendations and dismissed the State and CDCR from
9  this action with prejudice. (Order, May 12, 2010, Dkt. No. 9.)

10  On August 6, 2010, the Sheriff's Office filed a motion to dismiss plaintiff's
11  complaint. (Dkt. No. 14.) On September 28, 2010, plaintiff filed her First Amended Complaint,
12  which the court, for good cause appearing, deemed timely filed as a matter of course. (Order
13  Oct. 5, 2010, Dkt. No. 20.) The First Amended Complaint added defendants Brascino, Carter,
14  and Semillo.

15  The court screened the First Amended Complaint pursuant to 28 U.S.C.
16  § 1915(e). (Order, Oct. 5, 2010.) The court ordered the Marshal to serve the First Amended
17  Complaint on the County and defendants Brascino, Carter, and Semillo, none of whom had yet
18  appeared in the action.[6] (Id. at 5-6.) Despite the court's prior order, the First Amended
19  Complaint names Casey Gollihar's minor children as plaintiffs. (First Am. Compl. at 1.)
20  Accordingly, the court struck all references to the minor children from the First Amended
21  Complaint. (Order, Oct. 5, 2010, at 4.) Moreover, despite the court's order dismissing the State
22  and CDCR from this case with prejudice, the First Amended Complaint again names those
23  parties as defendants. (First Am. Compl. at 1.) Accordingly, the court did not order service of
24  the First Amended Complaint on the State or CDCR. (Order, Oct. 5, 2010, at 4.)

---

[6] The court did not order service on the Sheriff's Office because that defendant had already appeared in the action. (Order, Oct. 5, 2010, at 5-6 & n.4.)

5

On October 22, 2010, the Sheriff's Office filed the pending motion to dismiss plaintiff's First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff initially failed to file a timely written opposition or statement of non-opposition to the Sheriff's Office's motion and, accordingly, the court continued the hearing and provided plaintiff with a final opportunity to file a written opposition or statement of non-opposition. (Order, Dec. 6, 2010, Dkt. No. 27.)

Plaintiff filed a timely written opposition. (Dkt. No. 29.) In part, and as indicated above, plaintiff's opposition states that "Plaintiff has been unable to retain counsel; however, she recently contacted an attorney who may represent her if this Court grants leave to amend." (Pl.'s Opp'n to Mot. to Dismiss at 3.) At the January 20, 2011 hearing, plaintiff identified this attorney as Francis Shehadah. Indeed, it appears that although not retained, this attorney assisted plaintiff in the drafting of plaintiff's opposition brief "as a courtesy." (Andre-Gollihar Decl. ¶ 3.)

In terms of service of the remaining defendants, the court's docket reveals that the Marshal personally served the County on December 13, 2010. (Dkt. No. 30.) The court's docket further reveals that Marshal has not yet filed documentation reflecting service of the First Amended Complaint on defendants Brascino, Carter, and Semillo. However, the Sheriff's Office's reply brief suggests that the County and Semillo returned waivers of service forms during the week of January 3, 2011.[7] (Reply Br. at 3 n.2, Dkt. No. 32.)

Notably, it appears that Mr. Gollihar's wife filed a separate lawsuit related to her husband's death, with the caption of <u>Maria-Gollihar v. County of San Joaquin et al.</u>, 2:10-cv-00135 MCE KJM PS (E.D. Cal.).[8] United States Magistrate Judge Kimberly J. Mueller, who was recently appointed and confirmed as a United States District Judge, dismissed the complaint

---

[7] At the January 20, 2011 hearing, counsel for the Sheriff's Office again indicated that he had executed and returned waivers of service to the Marshal in regards to the County and Semillo. The court's docket does not yet reflect the filing of those waivers by the Marshal.

[8] These cases were never related, likely because plaintiff never filed a notice of related cases as required by the Court's Local Rules. See E. Dist. Local Rule 123.

6

without prejudice pursuant to the screening authority provided in 28 U.S.C. § 1915(e), and an amended complaint was filed that named only Anthony Joseph Gollihar, a minor, as a plaintiff. Judge Mueller screened the amended complaint and ordered plaintiff to file a second amended complaint, which plaintiff failed to do. Ultimately, the United States District Judge assigned to that matter dismissed the case for failure to file a second amended complaint.[9]

## II.    LEGAL STANDARDS

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the pleadings set forth in the complaint. Vega v. JPMorgan Chase Bank, N.A., 654 F. Supp. 2d 1104, 1109 (E.D. Cal. 2009). Under the "notice pleading" standard of the Federal Rules of Civil Procedure, a plaintiff's complaint must provide, in part, a "short and plain statement" of plaintiff's claims showing entitlement to relief. Fed. R. Civ. P. 8(a)(2); see also Paulsen v. CNF, Inc., 559 F.3d 1061, 1071 (9th Cir. 2009). "A complaint may survive a motion to dismiss if, taking all well-pleaded factual allegations as true, it contains 'enough facts to state a claim to relief that is plausible on its face.'" Coto Settlement v. Eisenberg, 593 F.3d 1031, 1034 (9th Cir. 2010) (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Caviness v. Horizon Cmty. Learning Ctr., Inc., 590 F.3d 806, 812 (9th Cir. 2010) (quoting Iqbal, 129 S. Ct. at 1949). The court accepts all of the facts alleged in the complaint as true and construes them in the light most favorable to the plaintiff. Corrie v. Caterpillar, 503 F.3d 974, 977 (9th Cir. 2007). The court is "not, however, required to accept as true conclusory allegations that are contradicted by documents referred to in the complaint, and [the court does] not necessarily assume the truth

---

[9] A district court may take judicial notice of proceedings within the federal judicial system where those proceedings have a direct relation to the matters at issue. See, e.g., Bias v. Moynihan, 508 F.3d 1212, 1225 (9th Cir. 2007); Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006); Cactus Corner, LLC v. U.S. Dep't of Agric., 346 F. Supp. 2d 1075, 1092 (E.D. Cal. 2004).

of legal conclusions merely because they are cast in the form of factual allegations." Paulsen, 559 F.3d at 1071 (citations and quotation marks omitted).

The court must construe a pro se pleading liberally to determine if it states a claim and, prior to dismissal, tell a plaintiff of deficiencies in his complaint and give plaintiff an opportunity to cure them if it appears at all possible that the plaintiff can correct the defect. See Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc); see also Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990) (stating that "pro se pleadings are liberally construed, particularly where civil rights claims are involved"). In ruling on a motion to dismiss pursuant to Rule 12(b), the court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899 (9th Cir. 2007) (citation and quotation marks omitted).

III.   DISCUSSION

At the outset, the undersigned notes three aspects of the parties' respective moving and opposition papers that impact the review of the pending motion to dismiss. First, it appears that the Sheriff's Office interprets plaintiff's First Amended Complaint as only alleging a claim for wrongful death under California state law and does not address plaintiff's potential claim for relief premised on an alleged violation of 42 U.S.C. § 1983, however inartfully pled.

Second, plaintiff's written opposition acknowledges the pleading deficiencies in the First Amended Complaint, at least insofar as plaintiff's intended Section 1983 claim is concerned, and seeks leave to amend to more clearly plead a Section 1983 claim. (Pl.'s Opp'n at 2, 4.) The opposition repeatedly states that the pleading deficiencies can be cured through amendment.

Third, plaintiff's written opposition suggests that if given leave to amend, plaintiff may wish to abandon: (1) all claims separately alleged against the Sheriff's Office; and (2) her state law wrongful death claim in its entirety. For example, plaintiff's opposition states: "The

8

1  sheriff's department should more accurately be identified in the complaint as Defendant County
2  of San Joaquin, d.b.a. County of San Joaquin Sheriff's Department.  This can simply be
3  corrected." (See Pl.'s Opp'n at 6.)  Moreover, plaintiffs opposition does not respond to most of
4  the Sheriff's Office's arguments seeking to dismiss the state law wrongful death claim; instead,
5  plaintiff focuses on the standards applicable to Section 1983 litigation.

      A.      Subject Matter Jurisdiction

Apparently because the Sheriff's Office interprets plaintiff's First Amended Complaint as only stating a single claim under California law, the Sheriff's Office's memorandum of points and authorities repeatedly asserts that this court lacks subject matter jurisdiction over this case. (Sheriff's Office's Memo. of P. & A. in Supp. of Mot. to Dismiss ("Sheriff's Memo.") at 2:2 (stating that "[t]here is no stated basis for jurisdiction"), 2:8 (stating that "there is no cognizable basis for jurisdiction").)  Although the Sheriff's Office is correct that plaintiff failed to allege a basis for subject matter jurisdiction in her First Amended Complaint, it is apparent that plaintiff intends to state a claim pursuant to 42 U.S.C. § 1983.  The court noted as much in its screening order. (Order, Apr. 7, 2010, at 3.)  Indeed, plaintiff's written opposition explicitly states as much and seeks leave to amend to more clearly plead a Section 1983 claim. (Pl.'s Opp'n at 2, 4.)  Assuming that plaintiff intends to allege a claim under Section 1983, the court would have subject matter jurisdiction premised on a federal question. See 28 U.S.C. § 1331.  The court would also have supplemental jurisdiction over plaintiff's state law claim. See 28 U.S.C. § 1367(a).

As noted in this order, the undersigned grants plaintiff leave to amend her First Amended Complaint to assert a claim pursuant to 42 U.S.C. § 1983.  Accordingly, plaintiff should address the basis for this court's subject matter jurisdiction in her second amended complaint.

////

////

9

B.  Plaintiff's Section 1983 Claim

As noted above, it is apparent that plaintiff intends to allege a claim pursuant to 42 U.S.C. § 1983. The Sheriff's Office moving papers do not address plaintiff's Section 1983 claim and, accordingly, do not seek dismissal of this claim.[10] Nevertheless, plaintiff's Section 1983 claim fails to adequately state a claim on which relief can be granted, and plaintiff acknowledges as much in her written opposition. Thus, in light of plaintiff's strong desire to amend her complaint and the court's power to dismiss the Section 1983 claim *sua sponte* under Federal Rule of Civil Procedure 12(b)(6), see e.g., Lee v. City of L.A., 250 F.3d 668, 683 n.7 (9th Cir. 2001), the undersigned dismisses plaintiff's Section 1983 claim as to all defendants without prejudice for the following reasons.

Generally, with respect to individual defendants, "Section 1983 imposes civil liability upon an individual who under color of state law subjects or causes any citizen of the United States to the deprivation of any rights, privileges or immunities secured by the Constitution and laws." Franklin v. Fox, 312 F.3d 423, 444 (9th Cir. 2002) (citing 42 U.S.C. § 1983). "To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of State law." Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006) (citing West v. Atkins, 487 U.S. 42, 48 (1988)).

Here, none of the individual defendants has appeared in the action yet, so the undersigned need not address plaintiff's Section 1983 claim in great detail. It is enough to say that plaintiff has not expressly alleged that any right secured by the Constitution or laws of the United States was violated or that the alleged violation was committed by a person acting under

---

[10] As plaintiff points out in her opposition, the Sheriff's Office briefly argues in a footnote that plaintiff's First Amended Complaint does not state claim under Monell v. Department of Social Services, 436 U.S. 658 (1978). (Sheriff's Memo. at 3 n.3.) Thus, it appears that the Sheriff's Office at least tacitly acknowledges that plaintiff attempts to allege a claim under 42 U.S.C. § 1983.

10

the color of State law. Accordingly, the undersigned dismisses plaintiff's Section 1983 claim alleged against the individual defendants.

Municipalities may also be liable for civil rights violations pursuant to 42 U.S.C. § 1983. The standards governing the liability of a municipality differ from those that govern the liability of individuals who acted under color of state law. Relevant here, in Monell the Supreme Court limited municipal liability and held that "a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." 436 U.S. at 691. Instead, "[l]ocal governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Id. at 690 (footnote omitted). The Court further stated that "it is when execution of a [local] government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Id. at 693; see also Bd. of County Comm'rs of Bryan County, Okla. v. Brown, 520 U.S. 397, 403 (1997) ("[W]e have required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury."); Levine v. City of Alameda, 525 F.3d 903, 907 (9th Cir. 2008) ("A city can be sued for monetary damages under 42 U.S.C. § 1983 if the constitutional violation was a product of a policy, practice, or custom adopted and promulgated by the city's officials.").

The Ninth Circuit Court of Appeals has held that in order to establish municipal liability, "the plaintiff must establish: (1) that he [or she] possessed a constitutional right of which he [or she] was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy was the moving force behind the constitutional violation." Miranda v. City of Cornelius, 429 F.3d 858, 868 (9th Cir. 2005) (citation and quotation marks omitted, modification in original);

see also Levine, 525 F.3d at 907 ("To establish [municipal] liability, a plaintiff must establish that he was deprived of a constitutional right and that the city had a policy, practice, or custom which amounted to 'deliberate indifference' to the constitutional right and was the 'moving force' behind the constitutional violation.") (citing Van Ort v. Estate of Stanewich, 92 F.3d 831, 835 (9th Cir. 1996)).  With respect to the last element, "[t]here must be a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." Villegas v. Gilroy Garlic Festival Ass'n, 541 F.3d 950, 957 (9th Cir. 2008) (en banc) (citation and quotation marks omitted).[11]

Here, plaintiff's allegations in the First Amended Complaint in no way satisfy the pleading requirements under Monell insofar as the County or the Sheriff's Office is concerned. Accordingly, plaintiff's Section 1983 claim is dismissed as to those defendants.  The undersigned notes that it appears that plaintiff may intend to abandon her Section 1983 claim against the Sheriff's Office.  Plaintiff's written opposition states that if given leave to amend, she would allege her Section 1983 claim against "Defendant County of San Joaquin, d.b.a. County of San Joaquin Sheriff's Department."  (Pl.'s Opp'n at 6.)  Thus, it appears that plaintiff intends to abandon her separate claim against the Sheriff's Office and proceed only against the County, doing business as the Sheriff's Office.

    C.    Plaintiff's Wrongful Death Claim Under State Law

In apparent reference to plaintiff's wrongful death claim under California law, the Sheriff's Office offers several arguments in favor of dismissal of that claim.  As noted above,

---

[11] There exist various formulations of the types of policies that may support a claim of municipal liability.  However, the Ninth Circuit Court of Appeals has stated that in addition to showing that a constitutional violation resulted from an express municipal policy or custom, "[a] plaintiff may also establish municipal liability by demonstrating that (1) the constitutional tort was the result of a 'longstanding practice or custom which constitutes the standard operating procedure of the local government entity;' (2) the tortfeasor was an official whose acts fairly represent official policy such that the challenged action constituted official policy; or (3) an official with final policy-making authority 'delegated that authority to, or ratified the decision of, a subordinate.'" Price v. Sery, 513 F.3d 962, 966 (9th Cir. 2008) (citing Ulrich v. City & County of San Francisco, 308 F.3d 968, 984-85 (9th Cir. 2002)); accord Villegas, 541 F.3d at 964 (Thomas, J., dissenting).

however, plaintiff's written opposition suggests that plaintiff might abandon her separate claims against the Sheriff's Office and might abandon her state law claim as to all parties. If true, plaintiff's intimation in this regard would resolve the Sheriff's Office's arguments in favor of dismissal of the wrongful death claim asserted against it.

Nevertheless, the undersigned briefly addresses the Sheriff's Office's substantive arguments. The undersigned concludes that plaintiff's state law claim should be dismissed as untimely filed, and plaintiff should only re-allege her state law wrongful death claim in a second amended complaint if she has a legal and factual basis for overcoming this hurdle.

1. Sheriff's Office As a Subdivision of the County

The Sheriff's Office contends that the County—and not the Sheriff's Office—is a proper defendant insofar as plaintiff's wrongful death claim is concerned because the Sheriff's Office is merely a subdivision of the County. (Sheriff's Memo. at 2-3.) None of the authority cited by the Sheriff's Office persuasively supports the argument that the Sheriff's Office is not a proper party here. Nevertheless, the undersigned need not resolve the Sheriff's Office's argument because, as discussed below, plaintiff's state law claim is time-barred.

In any event, plaintiff's only response to the Sheriff's Office's argument is:

> Under established § 1983 law, Defendant County of San Joaquin is a proper party, and it is important to note that the moving party on the 12(b)(6) motion is <u>not</u> the County of San Joaquin. The sheriff's department should more accurately be identified in the complaint as Defendant County of San Joaquin, d.b.a. County of San Joaquin Sheriff's Department. This can simply be corrected.

(See Pl.'s Opp'n at 6.) Again, this signals plaintiff's apparent intent to pursue her claim only against the County, and not against the Sheriff's Office as a separate entity. Thus, it appears that plaintiff does not oppose the Sheriff's Office's argument and, regardless, does not intend to pursue a separate wrongful death claim under state law against the Sheriff's Office.

////

////

13

2.       <u>Plaintiff's Standing to Bring Wrongful Death Claim Under California Law</u>

The Sheriff's Office also seeks dismissal of plaintiff's wrongful death claim on the grounds that Mr. Gollihar's wife—not his mother, who is the plaintiff here—is the only party that has standing to bring a wrongful death claim under California law. (Sheriff's Memo. at 3.) The Sheriff's Office cites a screening order from the matter of <u>Maria-Gollihar v. County of San Joaquin et al.</u>, which dismissed a wrongful death claim asserted by one of Mr. Gollihar's minor children with leave to amend. (Order, May 3, 2010, at 2, <u>Maria-Gollihar v. County of San Joaquin et al.</u>, 2:10-cv-00135, Dkt. No. 5.) The Sheriff's Office's argument is unpersuasive.

The Sheriff's Office asserts that a statement from an order in the <u>Maria-Gollihar</u> matter guides this case.[12] It states: "As stated by this Court in [the <u>Maria-Gollihar</u>] action when the complaint was amended to reflect one of Casey Gollihar's children as plaintiff, '[w]hether cast as a survivor action or a wrongful death action, the complaint as it now stands does not establish the right of plaintiff to proceed in this action. <u>See</u> Cal. Code Civ. Proc. §§377.30, 377.32, 377.60.'" (Sheriff's Memo. at 3.) As an initial matter, then-Magistrate Judge Mueller's order only stated that the complaint failed to assert a wrongful death claim as then-drafted, not that such a claim could not be brought as a matter of law. Moreover, that order did not contain any detailed analysis regarding why the complaint as drafted was subject to dismissal. Finally, the order provided the plaintiff in that action leave to amend. For these reasons, the order from the <u>Maria-Gollihar</u> matter relied on by the Sheriff's Office does not control here.

In any event, plaintiff has alleged facts in this case that support her standing to pursue a wrongful death claim under California law. Pursuant to California Code of Civil Procedure § 377.60, a parent who was dependant on the decedent has standing to assert a cause of action for the death of a person caused by the wrongful act or negligence of another. Plaintiff

---

[12] The Sheriff's Office has not expressly asserted that Magistrate Judge Mueller's order has some sort of claim preclusive or issue effect on this case and has presented no legal authority that would support such an argument.

14

alleges that she was dependent on her son, Mr. Gollihar, who is the decedent. (First Am. Compl. at 2.) Accordingly, taking plaintiff's allegations as true, plaintiff has standing to pursue a wrongful death claim under California law, and the Sheriff's Office's argument to the contrary lacks merit.

### 3.     Timeliness of Plaintiff's Wrongful Death Claim Under California Law

Finally, the Sheriff's Office argues that plaintiff's wrongful death claim is time-barred under California law because plaintiff did not comply with the timing and presentation requirements attendant to tort claims against public entities. (See Sheriff's Memo. at 3-4.) Plaintiff only responds that arguments regarding the presentation and timing requirements under California tort law should be "summarily disregarded" because pre-lawsuit notice provisions under state law do not apply to Section 1983 claims. (Pl.'s Opp'n at 5 (citing Felder v. Casey, 487 U.S. 131, 142 (1988).) Again, this argument appears to confirm that plaintiff intends to abandon her state law claim for wrongful death.

Assuming, however unlikely, that plaintiff intends to pursue a state law wrongful death claim, such a claim is time-barred. Under California's Tort Claims Act, a plaintiff must present his or her tort claim to the public entity at issue and, relevant here, commence his or her tort action against the public entity within six months of receiving written notice of the rejection of the claims presented. See Cal. Gov't Code § 945.6. Here, judicially noticeable documents attached to the Sheriff's Office's motion to dismiss plaintiff's original complaint indicate that plaintiff submitted her claim for damages to the San Joaquin County Clerk of the Board of Supervisors on July 18, 2008, and that plaintiff was given notice of the rejection of her claim on July 23, 2008. (See Maiolini Decl. ¶¶ 2-5 & Exs. 1-2, Dkt. No. 14, Doc. No. 14-2.) Accordingly, plaintiff was required to commence her action against the County and/or the Sheriff's Office on or before January 23, 2009. Plaintiff did not commence this action until November 30, 2009. Accordingly, her claim is time-barred. Plaintiff's state law wrongful death claim is dismissed without prejudice. However, plaintiff should not re-plead this claim unless

she can allege facts and legal authorities sufficient to overcome the conclusion that her claim is time-barred.

IV.     CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. The motion to dismiss filed by defendant County of San Joaquin Sheriff's Office (Dkt. No. 22) is granted.

2. Plaintiff's First Amended Complaint is dismissed without prejudice, and plaintiff is granted leave to file an amended complaint consistent with this order.

3. Plaintiff shall have sixty (60) days from the date of entry of this order within which to file and serve a further amended complaint entitled "Second Amended Complaint." *No requests for extensions of this 60-day period will be considered by the court.* Plaintiff is informed that the court cannot refer to prior pleadings in order to make an amended complaint complete. An amended complaint must be complete in itself. See E. Dist. Local Rule 220. This requirement is because, as a general rule, an amended complaint supersedes the original complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Accordingly, once plaintiff files an amended complaint, the prior complaints no longer serve any function in the case. Therefore, "a plaintiff waives all causes of action alleged in the original complaint which are not alleged in the amended complaint." London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981). *Finally, plaintiff is reminded that this is her final opportunity to amend her pleading in order to state a claim on which relief can be granted.*

////
////
////
////
////
////

1       4.    All defendants shall file respective answers or other responses to the Second Amended Complaint within thirty (30) days of being served with the Second Amended Complaint.[13]

IT IS SO ORDERED.

DATED: January 21, 2011

                             _____
                              KENDALL J. NEWMAN
                              UNITED STATES MAGISTRATE JUDGE

---

[13] See Fed. R. Civ. P. 5, 15(a)(3); E. Dist. Local Rule 135.

17